IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.                                                                                          18-MJ-5133

MARC PANEPINTO,

                Defendant.

---

## GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, James P. Kennedy, Jr., United States Attorney for the Western District of New York, and Assistant United States Attorney, Paul E. Bonanno, files this response to Defendant's Sentencing Memorandum, Letters In Aid Of Sentencing, And Statement Regarding Sentencing Factors (Dkt. 11).

## PRELIMINARY STATEMENT

On June 28, 2018, the defendant, MARC PANEPINTO, appeared before this Court and pleaded guilty to a single-count Information which charged a violation of Title 18, United States Code, Section 600 (promise of employment, compensation, or other benefit for political activity). As set forth in the plea agreement, the government and defendant calculated a sentencing guideline offense level of eight after all adjustments were applied. Thus, with a criminal history category of I, and a two-level reduction for acceptance of responsibility, the resulting sentencing guideline range anticipated by the plea agreement was 0 to 6 months, a fine range of $1,000 to $9,500, and a period of supervised release of 1 year.

## STATEMENT WITH RESPECT TO SENTENCING FACTORS

The government hereby adopts all findings of the Presentence Investigation Report ("PSR") (Dkt. 7) with respect to sentencing factors in this action.

## STATEMENT OF FACTS

The government concurs with and relies on the detailed statement of facts setting forth the offense conduct in paragraphs 5 through 18 of the PSR.

## APPLICABLE LAW

In determining the sentence to be imposed, the Court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The Court is required to "impose a sentence sufficient, but not greater than necessary" to comply with the following purposes:

(A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)  to afford adequate deterrence to criminal conduct;

(C)  to protect the public from further crimes of the defendant; and

(D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

In executing these statutory responsibilities, the Court must first correctly calculate the applicable guidelines range. *Gall v. United States*, 552 U.S. 38, 49 (2007). This range, although only advisory, is "the starting point and the initial benchmark." *Id.*

Next, after giving the parties an opportunity to argue for whatever sentence they deem appropriate (consistent with any limitations imposed by the plea agreement), the Court must "consider all the § 3553(a) factors to determine whether they support the sentence requested by a party." *Gall*, 552 U.S. at 49-50.  In determining whether the § 3553(a) factors support the requested sentence, the Court "must make an individualized assessment based on the facts presented." *Id.* at 50.  In that regard, "[n]o limitation shall be placed on the information concerning the background, character and conduct of a person convicted of an offense which a court . . . may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661.

## DISCUSSION

Defendant's sentencing memorandum states that defendant is remorseful for his conduct.  Deft.'s Memo. at 11-12.  Nonetheless, defendant seeks to minimize his conduct in ways that suggest he does not fully appreciate the wrongfulness of his actions.

First, defendant minimizes his conduct towards the victim staff-member in her hotel room in New York City.  In his memorandum, defendant states that his "physical contacts with the Staff Member was [*sic*] limited to massaging her feet." Deft.'s Memo. at 9.  Similarly, in his interview for the PSR, defendant said that "he gave her a foot rub, he asked her to 'crack' his back, and then he left the room." PSR ¶ 22.  In fact, as set forth in the factual basis section of the plea agreement, defendant first put his head on the victim staff-member's lap, then grabbed her feet, pulled her feet to his face, and said they smelled "sexy."  Furthermore, defendant took these actions after commenting on the victim-staff member's physical

3

attributes and comparing them to the physical attributes of other female staff members employed by defendant. In other words, defendant's conduct was more aggressive than his version of events suggests.

Defendant also comments in his memorandum that he did not "threaten or restrain" the victim staff-member or "slip her sedatives." *Id.* at 9-10. While it is true that defendant did not physically restrain or sedate the victim staff-member, he did attempt to coerce her by using his status as her employer and as a state senator to invite himself to her hotel room to "count donations" and then suggest he was going to promote her to chief of staff. In doing so, he took advantage of his status and power to exert substantial pressure on the victim staff-member. As stated by the victim staff-member in her letter to the Court, which is attached to the PSR, defendant "used the potential promotion to Chief of Staff as … a bargaining chip for inappropriate advancements."

Second, defendant mischaracterizes the crime to which he pleaded guilty as an attempt at a "settlement." Deft.'s Memo. at 10; PSR ¶ 23. It was not a "settlement." It was an illegal *quid pro quo* intended to stop a witness from testifying in an investigation. The victim staff-member had reported defendant's conduct to the state senate, which referred the matter to New York's Joint Commission on Public Ethics ("JCOPE") for investigation. Defendant knew JCOPE's investigation would result in a public censure and jeopardize his political career. In an effort to stop the investigation, defendant offered to pay the victim staff-member money and find her a job if she agreed not to cooperate with JCOPE's investigation.

Defendant tries to minimize his crime now by calling it a "settlement" attempt, but when he offered this illegal *quid pro quo*, he knew it was wrong.  That is why he sent another subordinate staff member to meet with the victim staff-member.  He told that staff member what to say, how much money to offer the victim to buy her silence, and, most importantly, he told the staff member to speak to the victim in hypotheticals and say the offer was *not* coming from defendant.  In other words, he tried to insulate himself from the illegal *quid pro quo* by sending a subordinate to make the offer for him.  Again, defendant used his status and power to take advantage of someone who trusted him.

The offensiveness of this conduct was exacerbated by defendant's position as a New York State Senator and member of the New York State bar.   Defendant had taken an oath to serve the public's interest and uphold the law.  He had a duty to maintain the integrity of our legal system.  But defendant did the opposite.  By trying to bribe a witness to not testify in an official state investigation, he put his own personal interests above the interests he had sworn to serve.  He sought to corrupt the system he was supposed to uphold.  He betrayed the trust placed in him.

## **CONCLUSION**

It is the government's position that a sentence can be fashioned within the guideline range that would reflect the seriousness of this offense, promote respect for the law, provide just punishment, and afford adequate deterrence.  It is also the government's position, however, that the sentence requested by defendant – a mere fine – would be insufficient to serve the purposes set forth in 18 U.S.C. § 3553(a)(2). Defendant's prior criminal conviction,

for forging nominating petitions, was punished only with a fine, and that clearly did not serve to deter defendant from future criminal conduct. Furthermore, the offense to which the defendant pleaded guilty is an attempt to pay money to avoid the consequences of his conduct. Defendant should not be permitted to pay money now in order to avoid punishment. As set forth in the PSR at pages 12-13, the sentencing options include periods of imprisonment, supervised release, probation, and community confinement, home detention, or intermittent confinement. The government believes that a sentence that imposes one of these options, or a combination of these options, would more properly serve the purposes set forth in 18 U.S.C. § 3553(a)(2).

DATED:   Buffalo, New York, December 12, 2018.

JAMES P. KENNEDY, Jr.
United States Attorney

BY:   s/ PAUL E. BONANNO
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
(716) 843-5873
Paul.Bonanno@usdoj.gov